# Brown's License.

*Liquor law —License—Refusal of license.*

It is not necessary that the reasons for which the court of quarter sessions refuses a liquor license should appear upon the record. The legal presumption is that the matter was considered and decided within the statutory provisions, and that after a hearing resulting in a refusal of the license there was a legal reason for the decree.

The appellate court will not reverse an order refusing a liquor license, worded as follows: " While there is nothing in the testimony to indicate that the applicant is not a suitable person to whom at a proper location to grant a license, the license at the place for which application is made, and in view of the evidence in respect to it, is refused."

A general order announced by the license courts at the beginning of its session that " Any person holding a license granted last year, or since transferred to him or her against whom no specific remonstrance has been filed, will be presumed to be entitled to a renewal of such license," will not prevent the court from subsequently refusing a license after due hearing because of lack of necessity, although no remonstrance has been filed against the holder of the license for the previous year, and he is otherwise a suitable person.

Argued Oct. 23, 1901. Appeal, No. 196, Oct. T., 1901, by Hugh Brown, from order of Q. S. March T., 1901, No. 399, refusing to grant a liquor license in the case of Hugh Brown's Application for a Retail Liquor License. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Application of Hugh Brown for a renewal of his retail liquor license at 803 Walnut street, Philadelphia, for the year beginning June 1, 1901.

It was stated in the paper-book of the appellant that the license had been transferred to Hugh Brown eight weeks before the hearing, and that Brown had paid the former owner $6,400 for the license. A remonstrance was filed against William E. Poulson and averred that Poulson occupied the premises 803 Walnut street as a liquor saloon and that the place adjoined a theater, although separated by a passageway.

The record showed that on March 4, 1901, at the beginning of the session of the license court a general order was announced which was in part as follows :

" Any person holding a license granted last year, or since transferred to him or her, against whom no specific remonstrance has been filed, will be presumed to be entitled to a renewal of such license. . . . All remonstrances against the granting of licenses shall be in writing, stating specifically the grounds of such remonstrances, and shall be verified by affidavit."

The final order of the court was made on July 19, 1901, and was as follows :

And now, to wit: July 19, 1901, the order of the court refusing a license is hereby amended so as to be read as follows :

While there is nothing in the testimony to indicate that the applicant is not a suitable person to whom at a proper location to grant a license, the license at the place for which application is made and in view of the evidence with respect to it, is refused.

*Error assigned* was the order of the court.

*Thomas Leaming*, for appellant.—A remonstrance against " Poulson " had no place in these proceedings upon Hugh Brown's application for a renewal and should have been ignored.

It is submitted the remonstrance was, for the reasons stated, null and void, and should not have been considered ; wherefore, there being no remonstrance, the court's order of March 4, 1901, operated, and the old licensee was entitled to a renewal: Kelminski's License, 164 Pa. 231.

While it is true that the continuity of a license is not a matter of right, yet the expectation of continuation during good behavior possesses such a tangible value that executors are surcharged for failing to sell it, trustees in bankruptcy daily expose it for sale at public auction in Philadelphia and derive thousands of dollars for the estates to be distributed by the United States court, and the market value of real estate is affected by its existence: Buell's Est., 185 Pa. 57 ; Maguire's Est., 58 Legal Int. 194 ; In, re Becker, 98 Fed. Rep. 407.

PER CURIAM, November 11, 1901 :

After a hearing the court made an order refusing the license which was amended subsequently so as to read as follows:

" While there is nothing in the testimony to indicate that the applicant is not a suitable person to whom at a proper location to grant a license, the license at the place for which application is made, and in view of the evidence with respect to it, is refused." It is thus seen that the license was not refused because of the unfitness of the applicant, but it does not follow that the reason for which it was refused was not a legal reason. The presumption is to the contrary : Netter's License, 11 Pa. Superior Ct. 566, and cases there cited. This presumption is not rebutted by anything that appears in the order above quoted, but rather is aided. In Commonwealth v. Kerns, 2 Pa. Superior Ct. 59, Judge ORLADY, speaking for this court, said : " The reasons for the decree are not given, nor is it necessary that they should be on the record. In its investigation the court would not be limited by, nor confined to the objections stated in the remonstrances. Under our license system the legislature has imposed on the court of quarter sessions the duty of hearing and acting upon these applications ; the power to judicially grant or refuse is lodged there. The legal presumption is that the matter was considered and decided within the statutory provisions ; and that after a hearing resulting in a refusal of the license, there was a legal reason for the decree."

The utmost that can be claimed for the announcement or order of March 4, 1901, is that upon the hearing of any particular application coming within the class, the judges would regard the facts specified in the order as prima facie evidence of the continued fitness of the applicant, and the continued necessity of his place for the public accommodation. But it is well settled that the court may in some instances act of its own knowledge. If, therefore, upon the hearing of this application it appeared in any legitimate way, or the fact was known to the court, that the applicant was not a fit person, or that his place was not necessary, it cannot be contended for a moment that the judges intended to, or that in advance of a hearing of the application they could, if they had intended, strip themselves of their discretion and bind themselves to grant a license, where to do so would be a clear violation of law. This was the construction, which after deliberate consideration, we gave to a similar order in Quinn's License, 11 Pa. Superior Ct. 554, and after

a full reconsideration of the question, we see no good reason
for holding otherwise.  It is scarcely necessary to remark that
the evidence given on the hearing, although printed in the ap-
pellant's paper-book, is not before us for review.  The certiorari
in such case brings up nothing but the record proper, and finding
no error therein the order must be affirmed.

Affirmed.